IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DERRICK CORNELIUS RHODES,<br>AIS # 219646, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:25-CV-1033-WKW |
| | ) | [WO] |
| VENCINI SMITH, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

In September 2025, Petitioner Derrick Cornelius Rhodes filed the instant 28 U.S.C. § 2254 petition, his first petition seeking a writ of habeas corpus.  (Doc. # 1.[1])  Rhodes challenges the constitutionality of his convictions for two counts of first-degree rape under Alabama Code § 13A-6-61 and two counts of first-degree sodomy under Alabama Code § 13A-6-63.  (*See* Doc. # 1.)  He was convicted in 2022 after a jury trial in the Circuit Court of Houston County, Alabama, on charges for raping and sodomizing his then-ten-year-old stepdaughter in July 2012 and received a concurrent, life sentence for each conviction.  (Doc. # 9-1 at 2; 9-3 at 1–

---

[1] References to "Doc(s)." are to the document numbers of the pleadings and other materials in the court's electronic record, as compiled and designated on the docket sheet by the Clerk of Court. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system.

2; Doc. # 14-7 at 156–57, 200; Doc. # 14-8 at 1–2.)  His § 2254 petition asserts a claim alleging the denial of effective assistance of trial counsel.  Rhodes argues that his trial counsel failed to discover and present evidence to the jury that he was in the custody of the Alabama Department of Corrections (ADOC) in July 2012 and "thus was actually innocent of raping and sodomizing the victim."  (Doc. # 1 at 6.)  On direct appeal and in Rule 32 post-conviction proceedings,[2] the state courts denied Rhodes relief.  (Docs. # 9-1, 9-2, 9-3, 9-5, 9-7.)

Respondent Vencini Smith, the warden of Donaldson Correctional Facility, answered the petition, contending that Rhodes asserts the same ineffective-assistance claim he raised in his Rule 32 proceedings and that the claim fails under the deferential review established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d).  (Doc. # 9 at 1, 5–8.)

Based upon a review of the parties' submissions and for the reasons explained below, Rhodes is not entitled to relief, and his § 2254 petition will be dismissed with prejudice.  Additionally, no evidentiary hearing is necessary to resolve the petition. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*.  Rhodes also will be denied a certificate of appealability.

---

[2] "Rule 32 of the Alabama Rules of Criminal Procedure governs available post-conviction remedies under Alabama law." *Borden v. Allen*, 646 F.3d 785, 799 n.16 (11th Cir. 2011).

## II.  SUBJECT MATTER JURISDICTION AND VENUE

Under 28 U.S.C. § 2254(a), federal district courts have the authority to consider an application for a writ of habeas corpus on behalf of an individual in state custody pursuant to a state-court judgment but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." This provision limits authority, rather than conferring it, with habeas jurisdiction established by 28 U.S.C. § 2241.  *See Thomas v. Crosby*, 371 F.3d 782, 787 (11th Cir. 2004).  Under § 2241, federal district courts have the power to grant writs of habeas corpus "within their respective jurisdictions," § 2241(a), when a state-convicted prisoner "is in custody in violation of the Constitution, " § 2241(c)(3). The "in-custody" requirement mandates that the habeas petitioner must "be 'in custody' under the conviction or sentence under attack at the time his petition is filed."  *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam).  Furthermore, § 2241(d), referred to as a "venue provision," "gives the petitioner 'the option of seeking habeas corpus either in the district where he is confined or the district where the sentencing court is located.'"  *Dobard v. Johnson*, 749 F.2d 1503, 1509–10 (11th Cir. 1985) (Clark, J., dissenting) (citation omitted).

Rhodes was in custody under a state-court judgment when he filed this petition.  Additionally, Rhodes was convicted and sentenced in the Circuit Court of Houston County, Alabama, and was serving his sentence in a state prison located in

the Middle District of Alabama.   Accordingly, this court has subject matter jurisdiction to consider the petition, and venue is proper.

### III.  BACKGROUND

**A.**   **State Court Trial Proceedings and Direct Appeal**

In November 2020, a grand jury convened in the Twentieth Judicial Circuit in Houston County, Alabama, and indicted Rhodes on multiple counts, including two counts for first-degree rape under Alabama Code § 13A-6-61 and two counts for first-degree sodomy under Alabama Code § 13A-6-63.  The indictments charged that between July 1, 2012, and July 31, 2012, Rhodes, who was an adult, raped and sodomized a minor who was younger than 12 years of age.  (Doc. # 9-8 at 32–39.) The minor was Rhodes's stepdaughter, who was ten years old at the time.  (Doc. # 9-1 at 2, 6–7.)

In March 2022, a jury convicted Rhodes on two counts of first-degree rape and two counts for first-degree sodomy.  He received a sentence of life for each conviction, to be served concurrently.  (Doc. # 14-7 at 156–57, 200; Doc. # 14-8 at 1–2.)  Rhodes timely appealed.  In a memorandum decision dated February 3, 2023, the Alabama Court of Criminal Appeals (ACCA) affirmed the circuit court's judgment and rejected Rhodes's "sole contention . . . that the circuit court erred in denying his motion for new trial on the basis that the verdicts [were] against the great

weight of the evidence." (Doc. # 9-1, at 4–8.) A certificate of judgment was entered on June 14, 2023. (Doc. # 9-2.)

## B.      Alabama Rule 32 Proceedings

In December 2023, Rhodes, proceeding *pro se*, filed a timely post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure in the Circuit Court of Houston County ("Rule 32 petition"). (Doc. # 9-8 at 43; Doc. # 9-3 at 2.) In March 2024, the Houston County Circuit Court summarily dismissed the Rule 32 petition. (Doc. # 9-3 at 3; *see also* Doc. # 9-8 at 55 (circuit court order granting the State of Alabama's motion for summary dismissal of the Rule 32 petition).)

Rhodes appealed to the ACCA, which affirmed the circuit court's summary-dismissal judgment. In a memorandum decision dated March 21, 2025, the ACCA summarized Rhodes's Rule 32 petition and the State's position as follows[3]:

> In his petition, D.C.R. alleged that his trial counsel was ineffective because he failed to meet with D.C.R. an adequate number of times to prepare for trial and develop trial strategy. He claimed that counsel's failure to meet with him resulted in counsel's failure to learn that D.C.R. was incarcerated in July 2012, the time period in which the victim alleged D.C.R. assaulted her, and that counsel's failure to learn this information and present this "viable defense" at trial "undermined" the outcome of his trial. (C. 15.) D.C.R. maintained in his petition that, if counsel had learned of D.C.R.'s incarceration in 2012, counsel could have presented this "viable – and likely successful – defense." (C. 16.) D.C.R. attached several exhibits to his petition.

---

[3] References to "D.C.R." are to Rhodes.

On March 12, 2024, the State filed a motion to dismiss. In its motion to dismiss, the State claimed that D.C.R.'s ineffective-assistance-of counsel claim was meritless because, although D.C.R. correctly stated that he was an Alabama Department of Corrections ("DOC") inmate, D.C.R. failed to disclose that he was an inmate at Houston County Community Corrections during the time in which the crimes were alleged to have occurred. The State also argued that D.C.R.'s petition was precluded under Rule 32.2(a)(1)–(5), Ala. R. Crim. P., and was insufficiently pleaded. In support of its motion, the State attached an exhibit showing notes from Houston County Community Corrections officers indicating that D.C.R. was oriented into the work release program facility in 2011, which apparently continued until at least June 2014, and that D.C.R. was approved for a "shopping pass" multiple times during July 2012. (C. 51-54.)

(Doc. # 9-3 at 2–3.) The ACCA explained that on appeal Rhodes asserted the same claim as in his Rule 32 petition. Rejecting the claim, the ACCA opined:

To prevail on an ineffective-assistance-of-counsel claim, a petitioner must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him. See Brown v. State, 663 So. 2d 1028, 1032 (Ala. Crim. App. 1995) (citing Strickland v. Washington, 466 U.S. 668 (1984)). To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In the present case, D.C.R.'s claim is clearly refuted by the record. D.C.R.'s ineffective-assistance-of-counsel claim is premised on the assertion that counsel did not learn of his incarceration at all, but the record refutes this claim. Prior to trial, defense counsel filed a "Notice of Alibi Defense," in which counsel argued that D.C.R. was an inmate with DOC at the time the crimes were alleged to have been committed and, thus, he could not have committed the alleged crimes in Houston County when he was incarcerated elsewhere. (Record from D.C.R.'s direct appeal, C. 279-86.) That motion also notified the court and the State that D.C.R. intended to subpoena the custodian of records

6

for the DOC.  At trial, counsel again discussed with the court its intention to put on an alibi defense.  (Record from D.C.R.'s direct appeal, R. 84-86.)  Further, the record from the trial indicates that D.C.R.'s trial counsel did, in fact, attempt to present an alibi defense throughout the trial.  Thus, D.C.R[.]'s ineffective-assistance-of-counsel claim was clearly refuted by the record and meritless.  Accordingly, the circuit court's summary dismissal of D.C.R.'s petition was proper.

(Doc. # 9-3 at 4–6 (footnote omitted); *see also* Doc. # 14-9 at 1–11 (exhibits the ACCA relied upon in its memorandum decision, C. 279-86, R. 84-86).)

Rhodes filed an application for rehearing, which the ACCA overruled without opinion on April 25, 2025.  (Docs. # 9-4, 9-5.)  He then filed a petition for a writ of certiorari to the Alabama Supreme Court, which was denied without opinion on July 11, 2025.  (Docs. # 9-6, 9-7.)  In both his application for rehearing and his petition for a writ of certiorari, Rhodes repeated his claim that his trial attorney was ineffective for failing to properly investigate and present evidence at trial that he was an ADOC inmate in July 2012, when the multiple, felonious acts of rape and sodomy for which he was convicted occurred.  (Docs. # 9-4, 9-6.)

**C.**     **The Instant 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus and Respondent's Answer**

On September 3, 2025, Rhodes filed the instant 28 U.S.C. § 2254 petition.[4] He asserts a single claim for the denial of effective assistance of trial counsel: "[H]ad his trial counsel properly represented him, he would have learned that he was incarcerated with the [Alabama] Department of Corrections in July of 2012 and thus was actually innocent of raping and sodomizing the victim." (Doc. # 1 at 6.)  He seeks any "relief to which he may be entitled in this proceeding." (Doc. # 1 at 12.)

Respondent contends that the state courts' adjudication of this ineffective-assistance claim did not result in a decision that was contrary to clearly established federal law. (Doc. # 9 at 4–8 (citing § 2254(d)(1)–(2) and *Williams v. Taylor*, 529 U.S. 362, 405–08 (2000)).)  Respondent argues that the record of the Rule 32 proceedings clearly demonstrates the lack of merit in Rhodes's claim.  That record shows that Rhodes was serving his state sentence in a community corrections program where he received "shopping passes" in July 2012, providing him ample opportunity to rape and sodomize the victim while not in a prison setting.  (Doc. # 9

---

[4] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  Absent evidence to the contrary, the court "assume[s] that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).  Rhodes dated his petition "September 3, 2025." (Doc. # 1 at 12.)  Respondent concedes that Petitioner timely filed this petition within the one-year period of limitation under 28 U.S.C. § 2244(d)(1).  (Doc. # 9 at 4.)

at 3, 7; *see also* Doc. # 9-8 at 48–50 (State of Alabama's motion to dismiss the Rule 32 petition, arguing that Rhodes "failed to disclose he was an inmate at the Houston County Community Corrections" during July 2012 as "proven by the attached exhibit showing notes made by employees of the Houston County Community Corrections Office made during his time from 2011 to 2014").)  Respondent further contends that Rhodes failed to meet both parts of the two-pronged test in *Strickland v. Washington*, 466 U.S. 668 (1984), which was his burden to satisfy in the Rule 32 proceedings.  In his reply brief, Rhodes expounds that his trial counsel's failure to present evidence that he was incarcerated in July 2012 prejudiced his defense and "undermine[d] confidence in the jury's verdict."  (Doc. # 12 at 2.)  He contends that it should have been for the jury to decide whether Rhodes "may have left the custody of the [ADOC]."  (Doc. # 12 at 2.)

## IV.  DISCUSSION

In his § 2254 petition, Rhodes alleges that his trial attorney provided constitutionally ineffective assistance by failing to properly investigate the facts and present an alibi defense at trial.  According to Rhodes, a proper investigation would have revealed that he was incarcerated in July 2012 in an ADOC facility, thus proving that he could not have committed the charged crimes of rape and sodomy, and that his attorney's failure to present this evidence at his trial prejudiced his defense.  Where, as here, a federal habeas court reviews the merits of a claim that

9

was adjudicated in state court, it applies the "highly deferential" standard of review mandated by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d).  *See Rhode v. Hall*, 582 F.3d 1273, 1279 (11th Cir. 2009) (per curiam).  Under § 2254(d), a federal habeas court's review of a state-court judgment is narrowly focused, and relief is contingent upon the petitioner showing that the state court's decision adjudicating a claim on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2); *see Williams v. Taylor*, 529 U.S. 362, 402–08 (2000) (discussing the standards under § 2254(d)(1) for when a state-court decision is "contrary to" or involves an "unreasonable application of" clearly established federal law).

Here, the state courts rejected Rhodes's ineffective-assistance-of-counsel claim in the Rule 32 proceedings.  To succeed on such a claim, a petitioner must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1221 (11th Cir. 2022).  Under *Strickland*, a petitioner "must show (1) that his trial counsel's performance was deficient and (2) that it prejudiced his defense."  *Id.* (cleaned up).

"Under *Strickland*'s performance prong, review of counsel's actions is 'highly deferential' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Davis v. Comm'r, Ala. Dep't of Corr.*, 120 F.4th 768, 789 (11th Cir. 2024) (quoting *Strickland*, 466 U.S. at 694). The reasonableness inquiry focuses on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. This is an objective standard, as the measure of performance "remains simply reasonableness under prevailing professional norms." *Id.* The *Strickland* standard applies to claims that trial counsel was ineffective for failing to investigate and introduce evidence to support a defense theory. However, *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

*Strickland*'s prejudice prong asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

However, when a federal habeas court reviews the state courts' resolution of an ineffective-assistance claim, it must consider an additional layer of review. The federal habeas court does not apply the *Strickland* standard *de novo* but instead applies the standard "through the additional prism of AEDPA deference." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1254 (11th Cir. 2013). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). As the Supreme Court further explained, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* "If there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state court decision denying the claim. *Mendoza v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1213 (11th Cir. 2014). In other words, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700

F.3d 464, 477, 480 (11th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

In the Rule 32 proceedings, the Alabama Supreme Court rejected Rhodes's ineffective-assistance claim. However, because the ACCA rendered the "last reasoned decision" on the ineffective-assistance claim, the discussion focuses on the ACCA's decision. *McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1261 n.12 (11th Cir. 2009) (observing that in the context of AEDPA review, the court "look[s] through" a summary decision to the "last reasoned decision" on the issue).

Rejecting Rhodes's ineffective-assistance claim, the ACCA identified *Strickland* as setting out the applicable clearly established federal law for reviewing such claims, *see* § 2254(d)(1). (Doc. # 9-3 at 4–5.) Therefore, the standard used by the ACCA was not "contrary to" clearly established federal law as set out in Supreme Court precedent. 28 U.S.C. § 2254(d)(1)–(2); *see also Williams v. Taylor*, 529 U.S. 362, 405 (2000) ("A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."). The ACCA then reviewed Rhodes's claim that his trial counsel was ineffective for failing to discover that he was incarcerated in an ADOC facility during the period when the charged offenses purportedly occurred and, consequently, failed to present evidence of that continuous incarceration at trial. (Doc. # 9-3 at 2.) Rejecting that claim, the ACCA held that the trial record "clearly

refuted" Rhodes's ineffective-assistance claim and was "meritless." (Doc. # 9-3 at 4–6.) It necessarily follows that the ACCA concluded that trial counsel's performance was neither deficient nor prejudicial to Rhodes's case. The issue is whether the ACCA unreasonably applied *Strickland*. It did not.

Under *Strickland*'s performance prong, when a petitioner claims "that his trial counsel should have done something more, [the court] first look[s] at what the lawyer did in fact." *Mendoza v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1213, 1237 (11th Cir. 2014) (citation and internal quotation marks omitted). The ACCA made the following factual findings pertaining to trial counsel's actions. First, the record demonstrated that, prior to the trial, Rhodes's attorney filed a Notice of Alibi Defense, in which he argued that Rhodes was incarcerated and in ADOC's custody at the time the charged crimes occurred, thus, rendering it impossible for him to have committed the offenses. (Doc. # 9-3 at 5; *see also* Doc. # 14-9 at 1–8 (Notices of Alibi Defense).) Second, the notice set forth Rhodes's intention to subpoena the custodian of records for the ADOC. (Doc. # 9-3 at 5–6; Doc. # 14-9 at 1–8.) Third, during the trial, counsel reiterated to the court Rhodes's intention to present an alibi defense. (Doc. # 9-3 at 6.) Fourth, the trial record showed that Rhodes's counsel "did, in fact, attempt to present an alibi defense throughout the trial." (Doc. # 9-3 at 6; *see also* Doc. # 14-9 at 9–11 (trial transcript).)

14

A state court's factual findings are "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Rhodes has not pointed to anything in the state-court record that rebuts by clear and convincing evidence the presumption of correctness that attached to the ACCA's factual findings.

Moreover, independent review of the trial record confirms that the ACCA's factual findings are based on a reasonable determination of the facts in light of the trial evidence.  *See* 28 U.S.C. § 2254(d)(2).  While trial counsel tried to develop an alibi defense based on Rhodes's custodial status prior to and during the trial, the trial evidence simply did not support that defense.  The trial testimony established that, in July 2012, Rhodes was assigned to the Houston County Community Corrections & Work Release (CCO),[5] where he retained sufficient freedom that would have allowed him to visit the victim and the victim's home.[6]  The victim testified that, in the CCO, Rhodes sometimes had at least an hour of free time during the work-release day and received shopping passes.  (Doc. # 14-5 at 173–74, 185.)  The victim's older sister testified that, when Rhodes was in the CCO, he "wasn't really gone" because he was "there constantly" and "drove my momma's car constantly."  (Doc. # 14-6 at 41.)  She further testified that Rhodes would visit their home "on his breaks" or

---

[5] "CCO" is the abbreviation used during the trial.  (*See, e.g.*, Doc. # 14-6 at 110.)

[6] The victim lived in Houston County during this time period.  (Doc. # 14-6 at 30.)

"after work a lot of the times" (Doc. # 14-6 at 42), and that between 2009 and 2014, when he intermittently was in the CCO and not in an ADOC facility, "he was never just fully gone," and "[w]e seen [sic] him every day" (Doc. # 14-6 at 43–44; *see also* Doc. # 14-6 at 48–49 (reiterating that, when Rhodes was in the CCO, "[h]e was there constantly," meaning their home).)

Additionally, the CCO's custodian of records confirmed that Rhodes was in the Houston County CCO during multiple periods, including from December 2011 through August 2012. (Doc. # 14-6 at 66–67.) He testified that CCO offenders who go out to work "are not followed" and "are not supervised" because the program is designed to transition them back into the community. (Doc. # 14-6 at 59.) He further testified that, in phase one, the CCO permits offenders to obtain shopping passes with family members or an eight-hour family pass and that phase two allows offenders to go home over the weekend. (Doc. # 14-6 at 64–65.) Relevant to the timeframe of the charged offenses, Rhodes went on a shopping pass on July 2, 2012 (Doc. # 14-6 at 73) and an eight-hour shopping pass on July 11, 2012 (Doc. # 14-6 at 90–91), and both times the victim's mother was listed as the contact.

Finally, notwithstanding the foregoing trial evidence, Rhodes's trial counsel sought to demonstrate Rhodes's inability to leave the CCO by eliciting on cross-examination that Rhodes had received a disciplinary infraction and was in restrictive custody for 60 days beginning May 31, 2012, but the testimony showed he still was

permitted to leave the CCO facility for work.[7]  (Doc. # 14-6 at 100–01.)  Also, on

redirect, the prosecution elicited testimony clarifying that Rhodes was taken off

restrictive custody "after about 30 days," meaning that he was not in restrictive

custody at the CCO in July 2012.  (Doc. # 14-6 at 107.)  Furthermore, the ACCA

cited the State's Rule 32 motion to dismiss and exhibit, which included

computerized notes from Houston County Community Corrections officers.  These

notes indicated that Rhodes was in the Houston County CCO work release program

facility from 2011 until at least June 2014, and that he was granted a "shopping pass"

multiple times in July 2012.  This court has examined the State's motion and exhibit,

which Respondent has provided (*see* Doc. # 9-8 at 48–55), and finds that the

ACCA's description of the exhibit is accurate.

In sum, the trial evidence refutes an alibi theory premised on Rhodes's

allegedly continuous confinement in an ADOC facility.  Although Rhodes's counsel

made reasonable efforts to pursue an alibi defense, the evidence at trial showed that

Rhodes was not continuously confined in a prison setting in July 2012 and could

have been present at the victim's home or with the victim during July 2012.  An alibi

defense based on uninterrupted incarceration in an ADOC facility was therefore

inconsistent with the trial record and unlikely to succeed.  Because the state-court

---

[7] Rhodes did not testify at his trial.  (Doc. # 14-7 at 58, 63.)

record lacks a sufficient factual basis to support Rhodes's claim that trial counsel failed to discover he was in an ADOC prison during the timeframe of the charged offenses, counsel's investigation was not deficient on that ground. Furthermore, Rhodes cannot "show that there is a reasonable probability that, but for" counsel's alleged error in advancing an alibi theory (impossibility due to incarceration), "the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Therefore, Rhodes has not shown that "the state court's application of the *Strickland* standard was unreasonable." *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 477, 480 (11th Cir. 2012) (citation omitted). At a minimum, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard," thus, supporting the ACCA's rejection of the ineffective-assistance claim predicated on an inadequate investigation. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

## V.  CONCLUSION

Given the state-court record and the doubly deferential *Strickland*–AEDPA standard of review, Rhodes's ineffective-assistance claim, which was denied on the merits in state court, does not warrant relief in this 28 U.S.C. § 2254 proceeding. Moreover, the record establishes that Rhodes misrepresented the trial evidence and the actions of his counsel. He has wasted the time and resources of this court and Respondent. Rhodes's 28 U.S.C. § 2254 petition will be dismissed with prejudice.

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A prisoner who seeks a certificate of appealability must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Having made a wholly frivolous claim, Rhodes has not met § 2253(c)(2)'s standard and, thus, will be denied a certificate of appealability.

Accordingly, it is ORDERED that Petitioner Derrick Cornelius Rhodes's 28 U.S.C. § 2254 petition is DISMISSED with prejudice and that he is DENIED a certificate of appealability.

Final judgment will be entered separately.

DONE this 24th day of June, 2026.

/s/ W. Keith Watkins<br>UNITED STATES DISTRICT JUDGE

19